IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : : : : | MDL NO. 1871 07-MD-01871 |
| THIS DOCUMENT APPLIES TO: | : : | HON. CYNTHIA M. RUFE |
| RICHARD V. D'APUZZO *on behalf of himself and all others similarly situated* v. SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE | : : : : : : : : | CIVIL ACTION NO.  07-4963 |

**MEMORANDUM OPINION AND ORDER**

Rufe, J.                                                                                                    September 7, 2011

The plaintiff in this case is a former user of the prescription diabetes drug Avandia. Plaintiff does not allege that he has been physically injured as a result of taking Avandia; instead he seeks a refund of any monies he paid for Avandia (including insurance co-pays) and medical monitoring.  Each type of relief is sought on behalf of a class of similarly-situated individuals (the "Refund Class" and the "Monitoring Class," respectively), but no classes have been certified.  The defendant, GlaxoSmithKline LLC ("GSK"), has filed a motion to dismiss. The motion will be granted.

**I. BACKGROUND**

Plaintiff alleges that GSK promoted the use of Avandia to lower blood-sugar levels of patients with Type 2 diabetes.  Plaintiff also alleges that taking Avandia significantly increases

the patient's chances of suffering a heart attack or susceptibility to other health risks, and that GSK concealed the risks of Avandia use while promoting the drug's safety, efficacy, and effectiveness through a fraudulent and deceptive marketing program.[1]  According to Plaintiff, this resulted in Plaintiff and others purchasing Avandia instead of seeking alternative treatments.[2]  Plaintiff alleges that he is a resident of New Jersey and that on or after May 25, 1999, he was prescribed Avandia for the treatment of Type 2 diabetes, that he purchased the drug and was "exposed" to Avandia for at least 12 weeks,[3] and having been exposed, he is at high risk for future myocardial ischemic events.[4]  These are the only allegations in the complaint specific to Plaintiff.

## II.  LEGAL STANDARD

Dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" does not possess enough substance to show that plaintiff is entitled to relief.[5]  In determining whether a motion to dismiss is appropriate the court must consider those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the

---

[1] Sec. Am. Compl. ¶¶ 4, 8.

[2] Sec. Am. Compl. ¶ 19.

[3] Sec. Am. Compl. ¶ 31.

[4] Sec. Am. Compl. ¶ 28.

[5] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).

non-moving party.[6] Courts are not bound to accept as true legal conclusions couched as factual allegations.[7] Something more than a mere possibility of a claim must be alleged; the plaintiff must allege "enough facts to state a claim for relief that is plausible on its face."[8] The complaint must set forth direct or inferential allegations with regard to all the material elements necessary to sustain recovery under some viable legal theory.[9] The court has no duty to "conjure up unpleaded facts that might turn a frivolous action . . . into a substantial one."[10]

### III. DISCUSSION

*A. New Jersey Consumer Fraud Act*

The complaint alleges a claim on behalf of the proposed Refund and Medical Monitoring Classes for violations of the New Jersey Consumer Fraud Act ("NJCFA").[11] To state a claim under the NJCFA, a plaintiff must allege unlawful conduct, an ascertainable loss, and that the loss was caused by the unlawful conduct.[12] The plaintiff is not required to allege reliance or malicious intent, but the loss must be actual, not hypothetical, and cannot be based on a fraud-on-

---

[6] ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir.1994); Fay v. Muhlenberg Coll., No. 07–4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[7] Twombly, 550 U.S. at 555, 564.

[8] Id. at 570.

[9] Id. at 562.

[10] Id. (citing McGregor v. Indus. Excess Landfill, Inc., 856 F.2d 39, 42–43 (6th Cir.1988)).

[11] N.J. Stat. Ann. §§ 56:8-1 to -195.

[12] Zafarana v. Pfizer, Inc., 724 F. Supp. 2d 545, 555 (E.D. Pa. 2010) (applying New Jersey law).

the-market theory.[13]  Plaintiff alleges that Avandia is more expensive than one alternative treatment, insulin, but does not allege that he would have been treated with insulin; nor does the complaint allege that other drugs Plaintiff identifies as alternatives to Avandia, such as Actos, are less expensive, or that his physician would have prescribed a less-expensive treatment regimen. "Due to the discretion of the prescribing physician, the injury alleged is entirely hypothetical, and cannot provide the basis for a claim under the NJCFA."[14]

Plaintiff's claim under the NJCFA on behalf of the proposed Medical Monitoring Class has been rejected by the New Jersey Supreme Court, which held in a similar case involving the drug Vioxx that:

> plaintiffs do not allege a personal physical injury. Thus, we conclude that because plaintiffs cannot satisfy the definition of harm to state a product liability claim under the [Product Liability Act ("PLA")], plaintiffs' claim for medical monitoring damages must fail. Plaintiffs' effort to expand the definition of harm to include medical monitoring is best directed to the Legislature.
>
> Plaintiffs also seek to avoid the requirements of the PLA by asserting their claims as CFA claims. However, the Legislature expressly provided in the PLA that claims for "harm caused by a product" are governed by the PLA "irrespective of the theory underlying the claim." N.J.S.A. 2A:58C-1(b)(3). We explained in [another case], that "[t]he language chosen by the Legislature in enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action in relating to harms caused by consumer and other products." As a result, we declared that "[i]n light of the clear intention of our Legislature to include all [product liability] claims within the scope of the PLA, we find no ground on which to conclude that the claims being raised by plaintiffs, regarding an ordinary household product used by consumers, were excluded from the scope of" the PLA. We reach that same conclusion here.[15]

---

[13] Id. at 556.

[14] Id.

[15] Sinclair v. Merck & Co., Inc., 948 A.2d 587, 595-96 (N.J. 2008) (citations omitted).

4

Although Plaintiff argues that he has not brought a claim under the PLA (and presumably cannot), he cannot distinguish this case from the holding in Sinclair: regardless of the legal theory, a claim that a product caused any harm can only be asserted under the PLA.

*B. Unjust Enrichment*

Plaintiff alleges a claim on behalf of the proposed Refund Class for unjust enrichment. Under New Jersey law, a plaintiff must allege that the defendant received a benefit from the plaintiff and that allowing the defendant to keep this benefit would be unjust.[16] There is no separate tort cause of action for unjust enrichment in New Jersey; instead, unjust enrichment provides the underlying logic for several torts, and also provides the basis for establishing quasi-contract liability.[17] Here, Plaintiff has not alleged a direct relationship with GSK which would be necessary to impose quasi-contract liability, or that GSK refused to provide its product after Plaintiff provided it with a benefit.[18] In the absence of some sort of contractual relationship, or a separate tort, Plaintiff has failed to allege a claim for unjust enrichment.

**IV. CONCLUSION**

Plaintiff's complaint fails to state any claim upon which relief can be granted. Defendant's motion to dismiss will be granted without prejudice; Plaintiff may file an amended complaint.

An appropriate order will be entered.

---

[16] VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 641 A.2d 519, 526 (1994).

[17] Castro v. NYT Television, 851 A.2d 88, 98 (N.J. Super. Ct. App. Div. 2004), cited in Zafarana, 724 F. Supp. 2d at 556-57.

[18] Zafarana, 724 F. Supp. 2d at 561.